# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**ANTHONY WILLIAM MILLER**                                                             **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO.: 4:18CV77-RP**

**PELICIA HALL, ET AL.**                                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

On August 7, 2018, plaintiff Anthony William Miller, an inmate confined at the Mississippi State Penitentiary at Parchman ("Parchman") appeared before the Court for a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed under 42 U.S.C. § 1983. A plaintiff's claim will be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998) (citations omitted). The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit. Miller having consented to magistrate judge jurisdiction in accordance with 28 U.S.C. § 636(c), the undersigned has the authority to enter this order and the accompanying final judgment.

### I. Plaintiff's Allegations

Miller was placed in long-term, high-risk segregation in Unit 29-L Building in December 2016, after he received a Rule Violation Report ("RVR") for murdering another inmate in self-defense. Miller alleges that while in segregation, he spent 24-hours a day locked in a cell with little sunlight, and that he was allowed yard-call approximately ten times in sixteen months.

Miller contends that approximately three months after his placement in Unit 29-L Building, he developed a rash on his face and began making sick call requests for medical

treatment and filing grievances for the denial of same. Miller claims that he did not receive medical treatment for approximately six months after his initial request, and that when he did receive treatment, it was in the form of hallway visits from a nurse who would merely prescribe medication. Miller states that he has since been examined by doctors and was initially diagnosed with eczema and provided creams. Later, he states, he was diagnosed with psoriasis and prescribed a steroid mixture which is improving his condition, but he claims that the medication he is currently prescribed is a temporary solution to an as-yet still unconfirmed condition.

Miller alleges that on November 27, 2017, Parchman's K-9 Unit began a shakedown of Unit 29-L Building, and that upon search of his cell, officers stated they found contraband (a shank and a cell phone/charger) above the outside of his cell door. Miller states that the following day, Officers L. Williams and D. Sanders came to his cell with two RVRs for possession of contraband. Miller stated he told both officers that he wanted a hearing and witnesses to appear at the hearing, but that the officers refused to indicate so on the RVRs. Miller, however, signed both documents.

Miller maintains that sometime in December 2017, Disciplinary Officer Kensi Terry came to his cell to hold an evidentiary hearing, and she agreed to "table" the RVRs based on Miller's argument that, as he was locked inside of his cell, he could not be charged with possession of items found outside of his cell door. She returned in January 2018, however, to find him guilty of both RVRs, which had allegedly been altered by officers to indicate that Miller had declined to request witnesses and/or a hearing. As punishment, Miller lost 180 days of canteen and visitation privileges.

On February 2, 2018, Captain Mumford and Officer Fipps found a cell phone and charger in Miller's cell during a routine shakedown, and the cell phone was confiscated. According to Miller, no RVR issued from the incident. Miller contends that on February 28, 2018, however, an officer came to his cell and stated that Miller had received an RVR from Captain Mumford for possession of a cell phone. On May 14, 2018, Officer Terry held a hearing on two RVRs

Miller received — one from the February 2, 2018, cell phone incident, and one for an unidentified incident alleged to have occurred on February 2, 2017. Miller asserts that the 2017 RVR was dismissed, while Terry found him guilty of the February 2, 2018, RVR, which resulted in a 180-day loss of privileges.

Miller also alleges that sometime in mid-February 2018, he ate breakfast in his cell and woke up in the prison infirmary some fourteen hours later. After Miller denied any drug use, Miller states that the nurse treating him told him he must have been "slipped" something. According to Miller, recently-obtained lab results from his hospitalization show that he had methamphetamines in his blood. Miller alleges that upon his return to his cell from the hospital, he noticed that his sheets were bloody and asked another inmate what had happened. Miller states that the inmate told him that he had been shaking and convulsing, and that Officer Fipps, who was working on the zone at that time, had been advised that something was wrong with Miller. Miller contends that the inmate stated that Officer Fipps refused to intervene, and that he was only taken for medical treatment when a nurse visited the unit and presumably noticed Miller unresponsive. Miller claims that prison officials have refused to investigate the incident, though repeated calls from his family did result in Miller being moved to Unit 28-J building in April 2018.

Miller additionally claims that he has been denied access to the court system, as Parchman has no law library, and he has been provided inadequate legal services through the Inmate Legal Assistance Program ("ILAP"). Miller contends that in connection with the instant case, he requested various RVR polices, an offender log print out, and case law from ILAP. On June 25, 2018, however, an ILAP employee informed Miller that he could not get case law unless he provided the year of publication. Miller contends that he is unable to provide such information without access to a law library, and that ILAPs failure to accommodate the restrictions placed on inmates essentially violates his right to effectively petition the courts.

3

Finally, Miller states that inmates in Unit 29 are to file Administrative Remedy Program ("ARP") grievances using the "black box," which allegedly resides in the Unit hallway, and that guards are prohibited from taking grievances from inmates. Miller contends, however, that he is locked in a cell and cannot access the hallway to file grievances. Miller states that he attempted to file a grievance about this against the ARP Director, R. Pennington, but that it was rejected by Pennington himself.

Based on these allegations, Miller has filed the instant action against Commissioner Pelicia Hall, Superintendent Marshal Turner, ARP Direcor R. Pennington, Disciplinary Officer Kensi Terry, Officer Fipps, Officer L. Williams, and Officer D. Sanders, seeking various injunctive relief and monetary compensation.

## II. RVRs/Disciplinary Proceedings

Miller claims that he has wrongfully been found guilty of several RVRs that were issued in violation of the policies and procedures of the Mississippi Department of Corrections ("MDOC"), and in violation of the United States Constitution. Specifically, he argues that he was denied the right to call witnesses at his disciplinary hearings, to be present at one of his disciplinary hearings, to receive accurate copies of the RVRs against him, and to have officers follow their own policy in writing, delivering, and reviewing the RVRs.

Miller's allegations implicate the Due Process Clause of the United States Constitution. In order to state a claim under § 1983 for the violation of a due process right, a plaintiff has to first identify a constitutionally-protected life, liberty, or property interest. *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) (citations omitted); *Moore v. Mississippi Valley State University*, 871 F.2d 545, 548 (5th Cir. 1989). If a protected interest is identified, a court must then determine what process was due before the deprivation occurred, and whether that process was afforded. *Davis v. Mann*, 882 F.2d 967, 973 n.16 (5th Cir. 1989).

The United States Supreme Court has held that "[s]tates may under certain circumstances

create liberty interests which are protected by the Due Process Clause [, but] these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). If the discipline administered to an inmate falls "within the expected parameters of the sentence imposed by a court of law" and does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," neither the Due Process Clause nor State regulations afford a prisoner a protected interest that would entitle the prisoner to procedural protections. *Id*. at 485-86.

The Court finds that while Miller complains that he was denied various due protection rights in connection with his disciplinary hearings, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Confrontation and cross-examination of witnesses are examples of such rights that are not required in prison disciplinary proceedings. *See Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997).

Moreover, Miller concedes that he only lost prison privileges as a result of being found guilty of RVRs, and a loss of privileges fails to implicate the due process clause. *See, e.g., Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997) (finding commissary and cell restrictions not the type of deprivation in which a liberty interest is created). This conclusion is not altered by allegations that MDOC failed to follow its own procedure or policy in association with the RVRs, as a failure to follow institutional rules does not present a constitutional claim. *See, e.g., Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("A violation of prison regulations, without more, does not

give rise to a federal constitutional violation."); *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984) (noting inmate's allegation that he was improperly charged in disciplinary proceeding does not, alone, raise a constitutional claim).

Additionally, the Court finds that Miller cannot raise a constitutional claim as it relates to any change in his classification because of any RVR he has received, as inmates have neither a protectable property nor liberty interest to any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990); Miss. Code Ann. §§ 47-5-99 to -103 (1993). Rather, prisoner classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250 (citations omitted).

Accordingly, Miller's allegations that he has been denied due process in association with his RVRs and disciplinary hearings fails to state a constitutional claim, and these allegations are dismissed against all defendants.

### III. Medical Care

Miller has alleged that he has been denied prompt and adequate medical care (1) in the treatment of his skin conditions; and (2) in Officer Fipps alleged failure to secure medical treatment for Miller following his lapse into unconsciousness in February 2018.

An inmate's right to medical care is abridged if a prison official acts with deliberate indifference to his medical needs, as deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a prison official is not liable under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the official (1) knew that the inmate faced a

6

substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. Where a plaintiff complains of a delay in medical treatment, he must show deliberate indifference to serious medical needs that resulted in substantial harm. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (citing *Easter v. Powell*, 457 F.3d 459, 464 (5th Cir. 2006)).

Not all failure to provide care is actionable, however, as negligent conduct by a prison official does not give rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). In fact, even if physicians misdiagnose or mistreat the plaintiff's condition in what amounts to medical malpractice, a prisoner cannot sustain a § 1983 claim without a showing of deliberate indifference. *See, e.g., Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (finding medical malpractice alone does not support §1983 cause of action). In addition, a plaintiff's disagreement with the course of medical treatment chosen will not support a claim of deliberate indifference. *See, e.g.*, *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Rather, liability under the deliberate indifference standard requires the plaintiff to produce evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson v. Texas Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (holding that deliberate indifference requires inmate to show prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs").

First, the Court finds that Miller cannot establish that he was denied constitutionally adequate medical care for the treatment of his skin condition, as his complaint and *Spears*

hearing testimony establish that he is receiving regular and ongoing treatment for his skin condition. Rather, Miller is merely unhappy with the treatment that has been provided and is worried that the medication will not be a permanent remedy for his skin condition. Such an allegation fails to rise to the level of deliberate indifference.

It is possible, however, that Miller might be able to sustain a claim against one or more individuals for the alleged six-month delay in receiving medical care. As noted above, Miller alleges that he had to wait six months between his first request for medical attention and actually receiving any medical care. He has not, however, alleged that any of the named defendants, none of whom are medical personnel, were responsible for this delay. Accordingly, all of the named defendants are entitled to be dismissed from this claim.

Finally, the Court considers whether Officer Fipps' alleged failure to secure medical care for Miller states a constitutional claim. Miller has not alleged that Fipps actually knew that Miller was in some sort of distress and decided to disregard the need for medical attention. Rather, he has stated only that other inmates yelled to Fipps, and that Fipps did not come check on Miller. Such conduct may state a claim for negligence, but it does not rise to the level of deliberate indifference. Moreover, Miller was asked at his *Spears* hearing whether he suffered any ongoing injury or complications after his return from the medical department, and he testified that he had not suffered any injury beyond the initial alleged drugging. Therefore, he cannot establish that he was substantially harmed by Fipps' failure to intervene earlier and secure medical treatment for him.

In sum, Miller has failed to state an actionable claim for the denial or delay of medical care against any of the named defendants. Inasmuch as Miller may be able to assert a claim for a delay in medical treatment for the six-month period it took him to get treatment for his skin

8

conditions, however, the Court will dismiss this claim without prejudice to allow Miller to reassert the claim if he can identify the person(s) responsible for the six-month delay.

### IV. Grievances Procedure/Failure to Investigate

Miller complains that he has inadequate access to the grievance process, that the grievance process is flawed, and that officers have failed to respond to his complaints. However, failing to properly investigate a grievance or a complaint is not actionable in a §1983 suit, as inmates have no constitutional or federal right to a prison grievance procedure, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), and no due process liberty interest in having their grievances resolved to their satisfaction, see *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005). This is true with regard to the ARP process itself as well as Miller's allegation that Defendants failed to adequately respond to his complaints of being drugged.[1] These claims are dismissed.

### V. Access to courts

A prisoner has a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). It is a limited right, applicable only in two situations: direct or collateral challenges to a sentence, or challenges to conditions of confinement. *Id*. at 354-55. In a situation where a plaintiff is complaining that the defendants' actions prevented his ability to present a legal claim, he must show (1) that he suffered an "actual injury" by losing the chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that there is no other available "remedy

---

[1] To the extent that Miller claims that one or more Defendants is responsible for drugging or poisoning him, the Court finds such allegations wholly conclusory and insufficient to support a claim. *See, e.g., Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (noting court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (citation omitted).

that may be awarded as recompense" for the lost claim other than the instant suit. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Miller has only alleged that ILAP's failure to provide him with legal services has hampered his ability to defend his disciplinary proceedings. He has not established that he has suffered any injury as a result of not being able to access the courts. In fact, Miller has filed numerous motions and correspondence with the Court since he initiated this lawsuit. This claim is dismissed.

### VI. Segregation as a condition of confinement

Miller claims that he and the rest of his zone were in an extended lockdown from December 2016 until April 2018, and that this long-term segregation has denied him his rights to exercise and properly clean himself.

Because placement in segregation is incident to a prisoner's ordinary life, it will rarely state a constitutional claim. *See Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996); *Luken v. Scott*, 71 F.3d 192, 192-93 (5th Cir. 1995). Rather, a plaintiff may sustain a challenge to his custodial classification only where "extraordinary circumstances" are shown. *Pichardo*, 73 F.3d at 612-13. As the Court has already noted, such circumstances are demonstrated only when a plaintiff can show that his confinement "imposes ayptical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. While certain conditions, such as indefinite confinement where almost all human contact is prohibited, and prisoners are kept in lighted, single cells for 23 hours a day, qualify as "extraordinary circumstances," the mere fact of being placed in segregation is incident to ordinary prison life. *Wilkinson v. Austin*, 545 U.S. 209 (2005); *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008).

Here, Miller has alleged that from December 2016 until April 2018, he was subject to a zone-wide lockdown that resulted in him being locked in a single-man cell with open bars, with permission to leave for medical appointments and showers three times per week. These restrictions are far from "an atypical prison experience." *Hernandez*, 522 F.3d at 563. While Miller also complains that he was only allowed outside for recreational time fewer than ten times during that time period, inmates have no constitutional interest in recreational activities where a plaintiff has not asserted a specific injury as a result of the denial of exercise. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (citation omitted); *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986). Miller has not asserted that he has physically suffered because of the infrequency of outdoor exercise, and therefore, he fails to state a cognizable constitutional claim.

## VII. Unexhausted claims

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies prior to filing suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). The Fifth Circuit has held:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). In his amended complaint, Miller complains of incidents involving two RVRs and the ILAP department's failure to accommodate requests that occurred subsequent to the filing of this lawsuit in March 2018. *See* Doc. #12.

11

Accordingly, it is impossible that Miller achieved pre-filing exhaustion with regard to these claims, and therefore, any claim presented that could not have been exhausted prior to March 2018 is alternatively dismissed for failure to exhaust. *See, e.g., Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (finding that complaint is subject to dismissal for failure to state a claim where failure to exhaust is apparent from the face of the complaint).

## VIII. Conclusion

Miller has failed to state a cognizable constitutional claim against any named defendant. Accordingly, this complaint is **DISMISSED**, and all named defendants are **DISMISSED WITH PREJUDICE** from this action. Miller's claim that he suffered an unconstitutional delay in medical care upon his move to extended lockdown in December 2016 is **DISMISSED WITHOUT PREJUDICE**, such that Miller may reassert the claim upon identification of the proper defendants.

**SO ORDERED** this the 9th day of August, 2018.

/s/ Roy Percy
**UNITED STATES MAGISTRATE JUDGE**